## Schoonmaker *versus* Stockton's Administrator.

*Devise of Estate in Fee Simple.—Construction of Wills.*

Where, in a will which evidently contemplated a complete distribution of the whole of the testator's real and personal property to and among his children, certain real estate was given to one of them, charged with the payment of an annuity to testator's widow, and sundry payments to his other children, it was *held* that the devisee took an estate in fee simple, although there were no words of inheritance in the devise, and the will provided that if any of the devisees should die unmarried, or without issue, his or her share should revert to the testator's general estate.

ERROR to the District court of *Allegheny county*.

This was an amicable action of debt, between Thomas M. Howe, administrator, &c., of David C. Stockton, deceased, and James Schoonmaker, in which the following case was stated for the opinion of the court:

It is hereby agreed that an amicable action in debt be entered, as above stated, in the District Court of the county of Allegheny, as of July Term 1860, and to have the same effect as if process had been regularly issued and served. And it is hereby agreed that the following facts be considered as in the nature of a special verdict, upon which the court may enter judgment, and either party have a right to take a writ of error to the Supreme Court. No exceptions to be taken to mere matter of form.

That David C. Stockton died on the — day of October 1858, leaving a wife, Clara C. Stockton, but no offspring, his only child having died in 1846, at the age of — years.

That Thomas M. Howe took out letters of administration in due form, according to law, upon the estate of said David C. Stockton, deceased, October 27th 1858.

That at the time of the death of said David C. Stockton, the said David held a bond and mortgage executed by said James Schoonmaker, bearing date 24th December 1857, in the sum of fourteen thousand two hundred dollars; condition for the payment of seventy-one hundred dollars (in six annual instalments, first due April 1st 1859, &c.), with interest from October 1st 1857.

That said bond and mortgage were given to secure the sum aforesaid, purchase-money of a certain lot or piece of ground, situate in the city of Allegheny, agreed to be conveyed to said Schoonmaker (per article of agreement, March 1st 1848, which was subsequently ratified and confirmed), by a general warranty deed from said Stockton and wife, bearing date the 24th day of December 1857, a copy of which is hereto annexed, and to be considered part of this stated case.

That said Schoonmaker, from the date of said article of agreement, has held quiet and peaceable possession of said premises.

[Schoonmaker *v.* Stockton's Administrator.]

That said David C. Stockton derived his title (whatever said title may be) to said lot or piece of ground, by virtue of the last will and testament of his father, Rev. Joseph Stockton, deceased.

That said Rev. Joseph Stockton died in October 1832; his will, probated December 11th 1832, a copy of which is hereunto attached and to be considered incorporated in this statement of facts, as part of the stated case.

That said David C. Stockton fully complied with all and singular the conditions mentioned in item first of said will, to wit: the payment of $100 per annum to surviving parent, the payment of $500 before the death of his father, and the $1500 to the youngest daughter on 12th January 1842, making the sum of $2000 mentioned in said will.

That said bond or mortgage, as part of the personal estate of David C. Stockton, deceased, came into the hands of Thomas M. Howe, administrator aforesaid, and were marked good by the appraisers of said estate and included in the inventory filed in the register's office in and for said county.

That there is now due on said bond eleven hundred dollars (instalment of principal $500, due April 1st 1859, and instalment of $600 due April 1st 1860), with interest on the whole sum of seventy-one hundred dollars from October 1st 1857.

The defendant aforesaid, James Schoonmaker (to settle all doubts about the title, raised by an intended purchaser of the land from him), sets up a defence to the payment of said bond, or any part thereof, a want of consideration, which consist in this: "that said David C. Stockton, as defendant alleges, was incapable of making to him, the said Schoonmaker, a *good fee simple* TITLE to the lot aforesaid (consideration for the said bond and mortgage)."

Upon the facts aforesaid, if the court should be of opinion that the said David C. Stockton had such an interest in the lot aforesaid, to enable him to convey to said Schoonmaker a fee simple estate to said lot; then judgment to be entered in favour of the plaintiff for the penalty named in said bond, to be released upon the fulfilment of the conditions therein named, with leave to plaintiff to take out execution for the instalments now due, with the interest assumed.

If the court should be of opinion that the said David C. Stockton had not such an interest in the lot aforesaid, to enable him to convey to said Schoonmaker a fee simple title to said lot, then judgment to be entered for defendant.

The portions of the will of Rev. Joseph Stockton, under which plaintiff's intestate held, and which were considered material in this controversy, are as follows:—" I, Joseph Stockton, knowing I must soon undergo a great change in the manner and place

[Schoonmaker *v.* Stockton's Administrator.]

of my existence, where I shall have no more connection with worldly things," &c., "I desire to make such a disposition of my worldly property to them as may show to my dearly beloved wife and children my deep sense of the Divine goodness in connecting me in these endearing relations with them," &c. "Governed by the principle that each of my dear children have equal claims to my affection and remembrance, I make, by these presents, the following distribution of my real and personal estate, viz. :—

"First: To my eldest son, David C. Stockton, I give and bequeath my town lot, No. 1, in the borough of Allegheny, with all the buildings, estimated in value at seven thousand dollars, and if he chooses to enter on the possession of it during my lifetime, to have a good and sufficient title for the same; said lot to be held subject to annual ground-rent or annuity of four per cent. on five thousand dollars, or two hundred dollars per annum during the lifetime of both his parents, and upon the decease of either, then only to two per cent., or one hundred dollars, to continue to the death of his other parent, and then to cease for ever. And the said lot is further made chargeable and held bound for the payment of fifteen hundred dollars to my general estate, when my youngest daughter shall be of legal age, viz., on the 12th of January, eighteen hundred and forty-two, without any interest till then, which sum of fifteen hundred dollars, together with five hundred dollars he has already advanced to the building on said lot, amounts to two thousand dollars, and taken from the estimated value of seven thousand, leaves five thousand, the sum supposed to be bequeathed in this legacy."

This was followed by similar devises of real estate to his other children, while to some he gave money legacies.

"Eighth: Should any of my dear children die unmarried, or without issue, then the legacy here left him, or her, or them, is to revert to the general estate, to be again equally divided by the parents or parent surviving, or in case of their decease, then by the surviving children, among themselves, which they are solemnly enjoined to do with all that kindness and justice which children of the same family should ever feel for each other."

On hearing, it was ordered and adjudged by the court below, that judgment be entered in favour of the plaintiff on the case stated.

The defendant thereupon sued out this writ, and assigned for error the entering of said judgment.

*R. & S. Woods*, for plaintiff in error, contended that the devise to David C. Stockton did not vest in him an estate in fee, but an estate tail.

*Michel & Palmer*, for defendant.—Although the word "heirs"

does not appear in the devising clause, yet connected with the preamble, which is explanatory of his intention, the devise is an estate in fee simple, and has been so acted on by all holders of Joseph Stockton's estate for over thirty years.

On the subject of intention, derived from the introductory words, they cited Schriver *v.* Meyer, 7 Harris 87 ; Walker *v.* Walker, 4 Casey 46.

The eighth clause of the will does not reduce the estate below a fee simple, for it is only a repetition of the intestate law, and is not inconsistent with the previous grant of the fee : Negley's Appeal, 9 Casey 91. To construe it an estate tail would defeat the intention of testator, which was that " each of his children should have an equal share of his estate." The personal estate is absolute, under the cases of Rewalt *v.* Ulrich, 11 Harris 388 ; Wheaton *v.* Shaw, 3 W. & S. 126 ; Bart's Appeal, 9 Casey 87 ; 4 Kent 283 ; 1 Blackstone 89 ; Amelia Smith's Appeal, 11 Harris 9 ; Hall *v.* Dickinson, 7 Casey 76. Where there is doubt, the estate should be construed absolute, rather than defeasible : Middlesworth *v.* Collins, 1 Phil. Rep. 139. David Stockton was married, had issue, and left a widow, so that the contingency of his dying unmarried did not happen : Dean, lessee of Griffett, *v.* Woodward *et al.*, 4 Yeates 316.

The opinion of the court was delivered, January 7th 1861, by

LOWRIE, C. J.—The testator intended to make by his will a *distribution* of his real and personal *estate* among his children, and so he expresses himself. He makes the division equal, and if he had failed to create more than life estates, each would have been equal heirs to the reversions, that is, each would have a life estate by the will, and the reversion by descent, which together would be the fee of the whole. This was not the intention. A complete *distribution* of the whole *estate* was intended. He is not devising his estate *from* his heirs, but dividing it among them, and therefore there can be no leaning against the devise in order to favour the heir. We favour the heirs by treating the will as a final declaration of the share of each. Add to this manifest general intent, that this particular lot was charged with an annuity to the widow, and a considerable sum for the other heirs, and it is quite plain that a fee simple was intended.

We cannot read the clause, providing for a reversion in case of a child dying unmarried, or without issue, as affecting this interpretation. We suppose it was intended not to reduce or defeat any estate vested in enjoyment under the will, but to dispose of any that might fail to become thus vested by the death of a child before the testator, or perhaps before actual distribution. Some of the shares are payable in money, and certainly no life estate was intended as to them ; and if not to them, then

to none. It is hardly supposable that it was intended to provide for the death of a child, it might be the last surviving one, a quarter or half a century after the testator's own death.

Judgment affirmed.